IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

STEPHANIE FULKERSON,              :

       Plaintiff,

       v.                            :          Case No. 3:13-cv-130

YASKAWA AMERICA, INC.,                       JUDGE WALTER H. RICE

       Defendant.            :

---

DECISION AND ENTRY OVERRULING MOTION FOR SUMMARY
JUDGMENT OF DEFENDANT YASKAWA AMERICA, INC. (DOC. #23)

---

Plaintiff Stephanie Fulkerson filed suit against her former employer, Yaskawa America, Inc. ("Motoman"), in the Montgomery County Court of Common Pleas.[1] Motoman removed the case to federal court based on federal question jurisdiction. Plaintiff's Amended Complaint alleges violations of the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), as set forth in Ohio Revised Code Chapter 4111, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207 and § 216(b), and the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601.

Plaintiff seeks recovery of damages for unpaid overtime compensation (1300 hours), an additional equal amount as liquidated damages, and compensatory damages. For the alleged violation of the FMLA, she seeks back pay, reinstatement or front pay, and liquidated damages, reasonable attorney fees, and

---

[1] Yaskawa's Motoman Robotics Division is located in Montgomery County.

pre-judgment and post-judgment interest. The matter is currently before the Court on Defendant's Motion for Summary Judgment (Doc. #23).

I.      **Background and Procedural History**

Plaintiff Stephanie Fulkerson began working as a Senior Marketing Administrator at Yaskawa America, Inc. ("Motoman"), in the summer of 2008 on a contract basis. Motoman is an Illinois corporation operating its Motoman Robotics Division in Montgomery County, Ohio. After several months of employment, Plaintiff was hired as a full time Senior Marketing Administrator on October 31, 2008. Doc. #21, PageID #172. She reported to Sally Fairchild, Senior Marketing Manager, for the duration of her employment at Motoman. *Id.* at PageID #173.

Plaintiff's scheduled hours were from 8:00 a.m. to 5:00 p.m. Monday through Friday. *Id.* at PageID #200. She was a non-salaried employee, and was initially paid an hourly rate of $17.50/hour. *Id.* at PageID #179. Although Plaintiff was hired as Senior Marketing Administrator, she was only provided the job description for Senior Administrator. *Id.* at PageID #175-176. This job description included administrative tasks, coordinating trade shows, distributing mail, and responding to general questions. *Id.* at PageID #174. However, Plaintiff claims that she also performed other tasks, including assisting the Vice President, two Directors, and seven department managers by scheduling appointments, meetings, travel arrangements, drafting correspondence, compiling reports, and other duties

as assigned by the Vice President, Directors, and department managers. *Id.* at PageID #176.

Motoman's "Employee Handbook" states that "[e]very non-exempt employee must complete and sign a timesheet for each pay period. Timesheets must reflect actual hours worked for each day." Employees are also advised: "The normal workweek consists of five (5) days of eight (8) hours duration each, for a total of forty (40) hours." *Id.* at PageID ##391-92. When there are overtime hours, Motoman compensates the employee at time-and-a-half the normal hourly rate. However, the employee's supervisor must pre-approve any submitted overtime hours. *Id.* at PageID#393; Doc. #29, PageID ##803-04.

Plaintiff logged into the time-keeping system every Friday, and entered her time into the system as required by Motoman. Doc. #21, PageID ##180-181. She admits that she did not keep track of her work hours by any other method. *Id.* at PageID #201.

After workforce reductions in 2009, Plaintiff alleges her workload became heavier and that she routinely worked in excess of forty hours per week. *Id.* at PageID #194, 218. It is undisputed that, on a few occasions, Fairchild and the other managers approved requests for overtime, and Plaintiff was compensated for those hours. Doc. #29, PageID #805; Doc. #21, PageID #182. Plaintiff maintains, however, that the vast majority of the time she was not compensated for the additional hours she worked.

Plaintiff testified that she arrived at work early, left work late, and worked during lunch, in addition to routinely performing work from home in the evenings and on the weekends. She was afraid that if she did not get the work done, she would be penalized. Doc. #21, PageID ##199-202. Plaintiff admits that she never formally kept track of these hours, but she estimates that she worked about 10 hours a week overtime for three years, totaling 1300 hours. *Id.* at PageID ##214-215.

Plaintiff explained that she did not record her actual hours worked because she did not think that Fairchild would approve the overtime hours. *Id.* at PageID ##199-200. Fairchild usually denied her requests for overtime, because overtime hours were "frowned upon." *Id.* at PageID ##182, 253. According to Plaintiff, if she entered more than forty hours per week, Fairchild would sometimes go into the system and manually change the records. *Id.* at PageID ##192-193. Fairchild denies this, and states that she had no ability to do so. Doc. #29, PageID ##810-11. Plaintiff admits that she never took her concerns about non-compensation for overtime hours to Human Resources. Doc. #21, PageID #193.

In May 2012, when Plaintiff requested that she be promoted to Executive Administrator, Fairchild asked her to keep a journal logging the Executive Administrative functions she was performing. *Id.* at PageID #220; Doc. #29, PageID #796. In the log, Plaintiff specifically stated that she had been taking work home and needed help. This log was occasionally sent to Fairchild, Roger Christian

4

(Vice President of Marketing) and Tim DeRosett (Director of Marketing). Doc. #21, PageID #219-220, 250-51.

On Wednesday, October 17, 2012, Plaintiff left work early for a "late lunch" to attend a doctor's appointment. *Id.* at PageID #297-98; Doc. #29, PageID #832. Plaintiff was being treated for depression and panic attacks. Doc. #21, PageID ##292-94. At this appointment, the doctor told her to refrain from returning to work for two weeks. *Id.* at PageID #300-301.

Plaintiff was given a doctor's note at the appointment, and testified that she planned to submit it upon her return to work, as she had usually done. *Id*. at PageID #302. She testified that, after arriving home, she sent an email to Fairchild and to Dianne Williams, a Human Resources representative, explaining that she was going to be absent from work for two weeks regarding a medical condition. She sent a blind copy to Jennifer Kann, a co-worker, at her home email address. *Id.* at PageID #300-301. The email stated,

> Sally, I hate to do this via email, but I really don't feel like talking right now. My doctor has decided that I cannot return to work for approximately 2 weeks-starting today. The current paperwork has me returning on 10/31/12, which is subject to change. I'm not sure how to proceed esp. with everything that I need to do for the upcoming shows. Feel free to contact me if there are any questions or anything I can do.
>
> Diane, please contact me if I need to submit any paperwork.
>
> Stephanie

*Id.* at PageID#501. The email was time-stamped as having been sent at 4:35 p.m. on October 17, 2012.

Fairchild and Williams claim they never received this email.  Doc. #29, PageID ##842-843; Doc. #31, PageID #965.  Jennifer Kann, however, testified that she did receive the email, time stamped with the date in question, October 17th.  Doc. #32-3, PageID #1057.

It is undisputed that Plaintiff did not call on Thursday or Friday to report her absence.  Doc. #21, PageID ##306-07.  On Friday, October 19, 2012, at 1:42 p.m., Ms. Fairchild left a voice message for Plaintiff,

> Hi Stephanie, it's Sally. I just wanted to make sure you're doing okay and needed to touch base with you.  If you can give me a call today by 4:00, I would appreciate it. So again, hope you're doing okay. Just give me a shout when you can.  Thanks.  Bye, bye.

*Id.* at PageID #478.  Plaintiff admitted that she did not return the call that day.  *Id.* at PageID #307.

On Saturday, October 20, 2012, Bill Reinker, a Robotic System Specialist, noticed Fairchild sitting at Plaintiff's computer and asked her if Plaintiff was still employed with the company.  Fairchild replied that she was still employed, but was "off on medical."  Doc. #29, PageID ##839-40.

On Monday morning, October 22, 2012, when Plaintiff again failed to report to work or call off, Motoman terminated her employment for being absent for two days without giving proper notice.  *Id.* at PageID #841.

When Plaintiff found out about the termination, she called and spoke to Deonda Myers, Director of Human Resources, and told her there must have been some misunderstanding.  Doc. #21, PageID#315.  Plaintiff forwarded to Myers the

6

October 17, 2012, email, along with the doctor's note. *Id.* at PageID #317.

Exhibit L, M, N. Motoman's IT department employee Jeff Magnuson was asked,

on October 23, 2012, to do a forensic search of the computers. He declared

under oath that the email message that Plaintiff allegedly sent to Fairchild and

Williams on October 17th never entered the Motoman company server system.

Doc. #23-3, PageID #652; Doc. #32-3, PageID ##1040-1041.

Plaintiff objected to the termination on the grounds that she gave proper

notice, but Motoman remained firm in its decision, claiming the email was never

received and citing the policy manual, which states that two days without

reporting to work with no phone call or notification is considered a voluntary

resignation. Doc. #29, PageID #832; Doc. #31, PageID #960.

On March 26, 2013, Plaintiff filed suit against Motoman in the Montgomery

County Court of Common Pleas. Defendant removed the case to federal court. On

January 22, 2014, Plaintiff filed an Amended Complaint, alleging violations of

federal and state overtime laws, and violations of the FMLA. Motoman has moved

for summary judgment on all claims. Doc. #23.

## II.    Motion for Summary Judgment

### A.    Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position*. Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(a). "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute

about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id*. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure* Civil 3d § 2726 (1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). If it so chooses, however, the court may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

### B. Federal and State Overtime Claims

Plaintiff's Amended Complaint alleges violations of the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1), and Ohio Minimum Fair Wage Standards Act (OMFWSA), Ohio Revised Code Chapter 4111. Under the FLSA, an employee must receive compensation at "not less than one and one-half times the regular rate at which he is employed" for each hour worked in excess of forty per week. 29 U.S.C. § 207(a)(1). OMFWSA contains identical

requirements for overtime pay. *See* Ohio Rev. Code §§ 4111.03(A). Because the

FLSA and OMFWSA claims are governed by the same standards, they may be

analyzed together. *Thomas v. Speedway SuperAmerica*, *LLC*, 506 F.3d 496, 501

(6th Cir. 2007).

A violation of these statutes creates employer liability for the unpaid

overtime compensation. 29 U.S.C. § 216(b); Ohio Rev. Code § 4111.10(A).

Under the FLSA, the employer is also liable for an additional equal amount as

liquidated damages, 29 U.S.C. § 216(b), unless the court determines that the

employer acted in good faith, 29 U.S.C. § 260.

Plaintiff maintains that she is entitled to unpaid overtime compensation and

liquidated damages for approximately 1300 unrecorded hours she allegedly spent

on work-related activities in excess of forty hours per week over a three-year

period from 2009 to 2012.

In a claim for unpaid overtime compensation, the employee bringing the

claim bears the burden of proving, by a preponderance of the evidence, that she

"performed work for which he [or she] was not compensated." *Myers v. Copper*

*Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999) (quoting *Anderson v. Mt. Clemens*

*Pottery Co.,* 328 U.S. 680, 686-87 (1946), *superseded by statute on other*

*grounds* as recognized in *IBP, Inc. v. Alvarez*, 546 U.S. 21, 41 (2005)). The

employee must also prove that the employer had actual or constructive knowledge

of that work. *Kuebel v. Black & Decker, Inc.*, 643 F.3d 352, 361 (2d Cir. 2011).

*See also Forrester v. Roth's IGA Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir.

1981) (holding that there is no FLSA violation when the employee "deliberately prevents the employer from acquiring knowledge of the overtime work"). If the employer knows that the employee is working and accepts the benefits of that work, compensation is required. *See Kellar v. Summit Seating Inc.*, 664 F.3d 169, 177 (7th Cir. 2011) (*citing* 29 C.F.R. § 785.13). "Work not requested but suffered or permitted is work time." 29 C.F.R. § 785.11.

It is the employer who has the duty "to keep proper records of wages, hours and other conditions and practices of employment and who is in the position to know and to produce the most probative facts concerning the nature and amount of work performed." *Anderson,* 328 U.S. at 687. *See also* 29 U.S.C. § 211(c) ("Every employer . . . shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him.").

Undoubtedly, the employee also bears some responsibility for accurate record-keeping, and "cannot undermine his employer's efforts to comply with the FLSA by consciously omitting overtime hours for which he knew he could be paid." *Wood v. Mid-America Mgmt. Corp.*, 192 F. App'x 378, 381 (6th Cir. 2006). Nevertheless, because the duty to maintain accurate records is non-delegable, "[o]nce an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation simply because the employee failed to properly record or claim his overtime hours." *Kuebel*, 643 F.3d at 363. When an employee falsifies time records by omitting overtime hours worked, and does so

"at the instruction of the employer or the employer's agents, the employer cannot be exonerated by the fact that the employee physically entered the erroneous hours into the timesheets." *Id.*

Moreover, if the time records kept by the employer are inaccurate, the employee cannot be penalized for the inability "to prove the precise extent of uncompensated work." *Anderson*, 328 U.S. at 687. Rather,

> the employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.* at 687-88. *See also Myers*, 192 F.3d at 551 (noting the "relaxed" burden of proof where the employer has kept inaccurate records). The burden may be satisfied through estimates based on the employee's own recollection. *Kuebel*, 643 F.3d at 362.

Defendant argues that summary judgment is warranted because Plaintiff has failed to produce sufficient evidence that her supervisors knew of the uncompensated overtime, and because Plaintiff's "guesstimate" that she worked 1300 hours without compensation is inaccurate and speculative.

The Court disagrees. Based on the evidence presented in this case, a reasonable jury could find that Plaintiff performed work for which she was not

compensated, and that her supervisors knew about it.  Genuine issues of material fact therefore preclude summary judgment on this claim.  Although the precise extent of the uncompensated work is unknown, Plaintiff has presented some evidence to support her 1300-hour estimate.  Defendant will have the opportunity to rebut that evidence at trial.

Defendant's employee handbook provides that "[e]very non-exempt employee must complete and sign a timesheet for each pay period.  Timesheets must reflect actual hours worked for each day."  Doc. #21, PageID #391.  The handbook further states, however, that all overtime hours must be approved in advance by the employee's supervisor.  *Id.* at PageID#393.

Plaintiff logged into Motoman's time-keeping system every Friday to record her work hours for the week.  *Id.* at PageID #180-181.  She claims that, at her supervisor's urging, she regularly falsified the records, under-reporting the number of hours worked.  *Id.* at PageID#187.  She was scheduled to work forty hours per week, but claims that she could not complete all of her required job responsibilities within that time frame, so she usually came to work early, stayed late, and took work home with her.  Although she regularly worked more than forty hours per week, she generally recorded only forty hours.

Occasionally, she received approval to work overtime, particularly if she was performing work for one of Fairchild's bosses or working at a trade show.  *Id.* at PageID#182, 187, 190-92, 206-07.  In these situations, she recorded more than forty hours and was compensated accordingly.

As a general rule, however, Fairchild would not approve Plaintiff's requests for overtime. Fairchild admits that, beginning in 2009, she discouraged Plaintiff from working overtime. The economy was poor, and the company was experiencing reductions-in-force. As such, the company had a policy that overtime would not be permitted. Although exceptions could be made for specific projects with tight deadlines, Fairchild did not believe that Plaintiff's requests were critical enough to warrant overtime. Doc. #29, PageID#802-08. Fairchild admitted, however, that Plaintiff's workload had increased, and she frequently met with her to "prioritize" projects. *Id.* at PageID ##758, 770.

Plaintiff testified that Fairchild told her that the work needed to be done, but even if she worked overtime, she could record only eight hours per day, and would get paid for only eight hours a day. "It didn't matter if I put in fifty hours, if I put in sixty hours. If it was for Sally and Sally was the only one that knew about it, I would only get paid for forty." Fairchild told her that she should simply be thankful that she had a job. Doc. #21, PageID##181-84, 196, 210.

Plaintiff also testified that on some occasions, when she recorded more than forty hours, Fairchild would go into the time-keeping system and manually change it. *Id.* at PageID ##192-193.[2] Other times, she would make Plaintiff revise it. *Id.* at 204. Sufficiently deterred, Plaintiff simply stopped requesting approval for overtime when she was working on projects for Fairchild, and did what she needed

---

[2] Fairchild denies that she had the ability to revise Plaintiff's time entries. Doc. #29, PageID#810.

to do to keep her job. *Id.* at PageID##184, 204-05. Based on this testimony, a reasonable jury could find that Plaintiff falsified her time sheets at the instruction of her employer.

A reasonable jury could also find that Plaintiff's supervisors were aware that she was working hours for which she was not compensated. Plaintiff testified that Fairchild was not necessarily aware that she came in early, since Fairchild did not arrive until later. However, Fairchild was usually still there after 5:00, so she knew that Plaintiff stayed late. Doc. #21, PageID#205. She also testified that Fairchild knew that she was doing some work at home. *Id.* at PageID#219.

In addition, the journal log that Plaintiff kept to support her request for a promotion was sent to Fairchild, and to Roger Christian and Tim DeRosett. In the log, Plaintiff complained about her workload, and wrote that she had been taking work home. *Id.* at PageID##219-20. Although Plaintiff never formally complained to the Human Resources Department, she did mention to Dianne Williams, a Human Resources employee, that she was having trouble getting everything done within a forty-hour workweek. *Id.* at 224. Plaintiff also spoke to Roger Christian about Fairchild's refusal to approve her overtime hours. He asked her to send him her journal log, and promised to talk to Fairchild, but nothing changed. *Id.* at PageID##225-26, 256.

Under the circumstances presented here, the fact that Plaintiff failed to obtain Fairchild's approval prior to working more than forty hours per week is not dispositive. If the employer knows that the employee is working overtime, and

accepts the benefits of that work, the employer cannot deny compensation simply because the employee failed to properly claim those overtime hours. This is particularly true when the employer has instructed the employee not to record those overtime hours. *See Kuebel*, 643 F.3d at 363; *Kellar*, 664 F.3d at 177; 29 C.F.R. § 785.11.

If a jury finds that Plaintiff performed work for which she was not compensated and that Defendant knew about it, the next question is the extent of damages. As noted above, because Defendant's time records are inaccurate, Plaintiff can satisfy her burden by producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687. The employer must then present evidence "to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687-88.

Plaintiff did not keep track of the hours she actually worked. Doc. #21, PageID #201, 214-215. She estimates, however, that, between 2009 and 2012, she worked approximately 1300 hours for which she received no compensation. This is based on her "conservative guesstimation" that she worked ten hours of overtime each week. *Id.* at PageID#216. Plaintiff testified that, although she was scheduled to work from 8:00 until 5:00, she came in early and left late 90% of the time, and took work home with her 90% of the time. *Id.* at PageID#200-01. She claims that, at a minimum, she was physically at work an extra five hours each week. In addition, she typically took work home with her, occasionally working

16

the whole weekend. *Id.* at PageID#214-18. The Court finds that Plaintiff has produced "sufficient evidence to show the amount and extent of that work as a just and reasonable inference." *Anderson*, 328 U.S. at 687.

The burden then shifts to Defendant to rebut that inference. Defendant has presented evidence to support a finding that Plaintiff's estimate is inflated by quite a bit. For 57 out of 134 weeks of the relevant time period, Plaintiff worked less than forty hours. She was paid for forty hours only because she used vacation time, sick days, or personal days. As such, for those weeks, she would not be entitled to any overtime. For another 20 weeks of that 134 week time period, Plaintiff was, in fact, paid overtime for the hours she recorded. Therefore, those hours would need to be deducted from Plaintiff's estimate as well. Doc. #23-1, PageID#650.

Notably, Defendant does not argue that Plaintiff's claim for unpaid overtime is entirely baseless. Although Plaintiff's estimate of the number of unpaid overtime hours is clearly subject to challenge at trial, she has presented sufficient evidence to survive summary judgment on her federal and state overtime claims. A reasonable jury could find that Plaintiff, with her employer's knowledge, worked many hours for which she was not properly compensated. The extent of damages is an issue to be determined at trial. The Court therefore overrules Defendant's motion with respect to the claims for overtime compensation.

### C.      Family and Medical Leave Act Claims

The Family and Medical Leave Act ("FMLA") was enacted in 1993 to "balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity" and to "entitle employees to take reasonable leave for medical reasons."  29 U.S.C. § 2601(b).  Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612 (a)(1)(D).

The Sixth Circuit has recognized two theories of recovery under the FMLA. An "entitlement" or "interference" claim is based on 29 U.S.C. § 2615(a)(1), which makes it unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this chapter."  A "retaliation" or "discrimination" claim is based on 29 U.S.C. § 2615(a)(2), which prohibits employers from discharging, or otherwise discriminating against, individuals who oppose unlawful FMLA practices. *See Hoge v. Honda of Am. Mfg., Inc.,* 384 F.3d 238, 244 (6th Cir. 2004).

Here, Plaintiff has asserted both types of claims.  She alleges that Defendant willfully interfered with and denied the exercise of her rights under the FMLA, and retaliated against her for exercising her FMLA rights by terminating her

18

employment. Defendant has moved for summary judgment on both claims. For the reasons set forth below, the Court overrules Defendant's motion.

### 1. FMLA Interference Claim

For a plaintiff to recover on an FMLA "interference" claim, she must prove that: (1) she is an eligible employee, as defined in 29 U.S.C. § 2611(2); (2) defendant is a covered employer, as defined in 29 U.S.C. § 2611(4); (3) she was entitled to take leave under the FMLA; (4) she gave adequate notice of her intent to take leave; and (5) defendant denied her FMLA benefits to which she was entitled, or otherwise interfered with her FMLA rights. The employer's intent is irrelevant. *Hoge*, 384 F.3d at 244.

The first three elements here are undisputed. At issue is whether Plaintiff gave adequate notice of her intent to take leave, and whether Defendant denied her FMLA benefits to which she was entitled. Defendant argues that Plaintiff was not entitled to FMLA leave because she failed to provide adequate notice of her intent to take leave. Genuine issues of material fact preclude summary judgment on this claim.

Plaintiff has presented evidence that on the afternoon of October 17, 2012, when she returned home from her doctor's appointment, she sent an email message to her supervisor, Sally Fairchild, and to Human Resources representative Dianne Williams, explaining that her doctor had ordered her to stay off work for the next two weeks. She sent a blind copy of the same message to her co-worker Jennifer Kann. Doc. #21, PageID ##300-01.

Kann received the email message. Doc. #32-3, PageID #1057. Fairchild and Williams claim that they did not. Doc. #29, PageID ##842-43; Doc. #31, PageID #965. Their testimony is corroborated by Jeff Magnuson's testimony that this email message never entered Motoman's server system. Doc. #23-3, PageID #652.

Fairchild admitted that, had she received the message, it would have constituted adequate notice of Plaintiff's need for FMLA leave. She also testified that she had no reason to dispute that Plaintiff actually sent it at 4:35 p.m. on October 17th. Doc. #29, PageID##846-47. She simply knew that she did not receive it. Fairchild never suspected Plaintiff of lying or being dishonest. *Id.* at PageID#849. Likewise, Williams testified that she has no reason to believe Plaintiff never sent the email, other than the fact that she never received it. Doc. #31, PageID #972.

Drawing all reasonable inferences in Plaintiff's favor, as the Court must do on this motion for summary judgment, other evidence suggests that Fairchild may, in fact, have received the email message on October 17th. On October 19th, Fairchild left a voice mail message for Plaintiff, stating, "I just wanted to make sure you're doing okay and needed to touch base with you." Doc. #21, PageID #478. Fairchild claims that she called to check on Plaintiff simply because she had not heard from her since she left the office on October 17th for her doctor's appointment. But a reasonable jury could also infer that, having received Plaintiff's email message indicating that her doctor would not allow her to return to work for

20

another two weeks, Fairchild was genuinely concerned about Plaintiff's health and well-being. In addition, Fairchild's statement to Bill Reinker on October 20, 2012, that Plaintiff was "off on medical" supports an inference that Fairchild had received Plaintiff's email notifying her of the need for leave.

Moreover, even though Plaintiff's computer was also subjected to a forensic examination by James Swauger, Doc. #32-4, PageID#1062, there is no evidence to support a finding that she did not actually send the email message to Fairchild and Williams on the afternoon of October 17th as she claims she did, or that the message was in any way fabricated or altered after-the-fact.

For these reasons, the Court concludes that genuine issues of material fact preclude summary judgment on Plaintiff's FMLA interference claim.

### 2.    FMLA Retaliation Claim

As noted above, the FMLA also prohibits employers from retaliating against employees who take FMLA leave. 29 U.S.C. § 2615(a)(2). Where, as here, there is no direct evidence of a retaliatory discharge, the Sixth Circuit employs the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007).

In order to establish a prima facie case of retaliatory discharge under the FMLA, a plaintiff must show that: (1) she availed herself of a protected right under the FMLA; (2) she suffered an adverse employment action; and (3) that there was a causal connection between the two. *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 508 (6th Cir. 2006) (citing *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d

21

309, 314 (6th Cir. 2001)). The employer's motive is an "integral part" of this analysis. *Id.*

If the employee establishes a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action. If the employer succeeds in doing so, the burden then shifts back to the employee to show that the proffered reason is pretextual. *See Bryson*, 498 F.3d at 570.

Defendant argues that Plaintiff cannot establish a prima facie case of retaliation because she cannot establish the requisite causal connection. Defendant insists that it made the decision to terminate her employment *prior* to learning of her need for FMLA leave, making it impossible for Plaintiff to prove that her use of FMLA leave motivated the termination decision. This presumes, however, that Fairchild and Williams did not receive the October 17, 2012, email message allegedly sent by Plaintiff. As discussed above, genuine issues of material fact preclude summary judgment on this issue.

Assuming *arguendo* that Defendant did receive notice of Plaintiff's need for FMLA leave on October 17th, and made the decision to terminate Plaintiff's employment on October 22nd, just five days later, the temporal proximity could establish the requisite causal connection. *See Bryson*, 498 F.3d at 571 (holding that "proximity in time between the protected activity and the adverse employment action may constitute evidence of a causal connection" for purposes of establishing a prima facie case of retaliatory discharge under the FMLA); *Mickey v.*

22

*Zeidler Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) (holding that "[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation.").

The Court finds that genuine issues of material fact preclude summary judgment on the question of whether there was a causal connection between Plaintiff's exercise of her FMLA rights and her termination. Assuming that Plaintiff can establish a prima facie case of retaliation, the burden then shifts to Defendant to present a non-retaliatory reason for the termination. *See Bryson*, 498 F.3d at 570. Defendant contends that Plaintiff was terminated because she had been absent for three days without contact or notice, in violation of company policy. Moreover, Plaintiff failed to return Fairchild's October 19th, voice mail message. The Court finds that Defendant has satisfied its burden.

The burden therefore shifts back to Plaintiff to show that the proffered reason is pretextual. *Id.* Pretext can be established by showing that the proffered reason had no basis in fact, did not actually motivate her discharge, or was insufficient to motivate her discharge. *Harris v. Metro. Gov't of Nashville & Davidson Cnty.*, 594 F.3d 476, 486 (6th Cir. 2010). Based on the evidence presented, a reasonable jury could find that the proffered reason had no basis in fact. Again, genuine issues of material fact exist concerning whether Fairchild and/or Williams received the October 17th email message.

In its reply brief, Defendant argues for the first time that the "honest belief" rule defeats any pretext argument and warrants dismissal of the retaliation claim. The Sixth Circuit has held that "so long as an employer honestly believed in the proffered reason given for its employment action, the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken." *Smith v. Chrysler Corp.,* 155 F.3d 799, 806 (6th Cir. 1998). If the employer honestly, but mistakenly, believes in the non-retaliatory reason it relied upon in making the decision, then the employer arguably lacks the necessary intent. *Id.* Defendant maintains that, regardless of whether the email message was sent and received, it held an honest belief that Plaintiff had failed to appear for work or report her absence for more than two consecutive days. Because this argument was presented for the first time in a reply brief, and Plaintiff had no opportunity to respond to it, the Court need not consider it. *Ross v. Choice Hotels Int'l, Inc.*, 882 F. Supp. 2d 951, 958 (S.D. Ohio 2012).

The Court concludes that genuine issues of material fact preclude summary judgment on Plaintiff's claim of FMLA retaliation.


**III.    Conclusion**

For the reasons set forth above, the Court OVERRULES Defendant's Motion for Summary Judgment, Doc. #23, in its entirety.

Date: September 16, 2014

WALTER H. RICE
UNITED STATES DISTRICT JUDGE