IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

STEPHANIE FULKERSON,　　　　：

　　　　Plaintiff,

　　v.　　　　　　　　　　　　　：　　Case No. 3:13-cv-130

YASKAWA AMERICA, INC.,　　　　　　JUDGE WALTER H. RICE

　　　　Defendant.　　　　　　：

---

DECISION AND ENTRY AWARDING PLAINTIFF LIQUIDATED
DAMAGES UNDER 29 U.S.C. § 216(b); SUSTAINING IN PART AND
OVERRULING IN PART PLAINTIFF'S MOTION FOR ATTORNEY FEES
(DOC. #97); AWARDING PLAINTIFF $39,776.43 IN ATTORNEY'S
FEES TO DATE; PLAINTIFF TO SUBMIT SUPPLEMENTAL FEE
MOTION AND ADDITIONAL MATERIALS TO SUPPORT MOTION FOR
COSTS WITHIN 10 DAYS; DEFENDANT MAY FILE RESPONSE
WITHIN 7 DAYS THEREAFTER; DEFENDANT TO SUBMIT
DOCUMENTATION OF FEES AND COSTS RELATED TO TRIAL DELAY
WITHIN 10 DAYS; PLAINTIFF MAY FILE RESPONSE WITHIN 7 DAYS
THEREAFTER

---

Plaintiff, Stephanie Fulkerson, alleged that Defendant, Yaskawa America,

Inc., violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1), by

failing to pay her certain overtime compensation to which she was entitled, and by

retaliating against her when she complained about it. She also alleged that

Defendant interfered with her right to leave under the Family and Medical Leave

Act ("FMLA"), 29 U.S.C. § 2615, and retaliated against her in violation of that

statute.

On May 8, 2015, a jury found in favor of Defendant on the claims of FLSA retaliation, and FMLA interference and retaliation. The jury found in Plaintiff's favor on the FLSA overtime claim, and awarded $2,739.00 in damages. Because the jury found that Defendant did not willfully violate the FLSA, Plaintiff was entitled to recover unpaid overtime compensation for only two years instead of three. *See* 29 U.S.C. § 255(a).

During a conference call, held on May 12, 2015, the Court discussed the three post-trial issues that still needed to be resolved: (1) whether Plaintiff is entitled to liquidated damages under 29 U.S.C. §§ 216(b) and 260; (2) the amount of attorney's fees and costs to be awarded to Plaintiff on the FLSA overtime claim; and (3) the disbursement of the $20,960.00 that Plaintiff deposited in an escrow account to cover Defendant's anticipated fees and costs incurred as the result of an earlier delay of trial caused by Plaintiff's belated disclosure of additional evidence.

## I.    Liquidated Damages

As a general rule, an employer found in violation of the FLSA is liable for the amount of unpaid overtime compensation, "and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Liquidated damages are considered to be the "norm." *Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 584 (6th Cir. 2004). Nevertheless, the FLSA also provides as follows:

> In any action commenced prior to or on or after May 14, 1947 to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended [29 U.S.C.A. § 201 et seq.], if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260. The employer's burden of proving both "good faith" and "reasonable grounds" is "substantial." *Martin*, 381 F.3d at 584. Moreover, an award of liquidated damages need not be predicated on a finding that the employer intentionally violated the FLSA; mere negligence is sufficient. *Id.*

As noted above, the jury found that Defendant did not willfully violate the FLSA. This finding was made for the purpose of determining the applicable statute of limitations under 29 U.S.C. § 255(a). In deciding whether Plaintiff is entitled to liquidated damages, the Court must first determine how much weight, if any, to give the jury's finding on the "willfulness" issue.

The Sixth Circuit has held that a jury's determination that an employer willfully violated the FLSA is inconsistent with a finding that the employer acted in good faith and with reasonable grounds for believing that its conduct did not violate the law. *EEOC v. City of Detroit Health Dep't*, 920 F.2d 355, 357-58 (6th Cir. 1990). However, the converse is not necessarily true. *See Burgess v. Catawba Cty.*, 805 F. Supp. 341, 351 (W.D.N.C. 1992) ("It appears, however, that an employer's conduct may be found to be not willful, yet he may be unable

to meet his burden of establishing good faith and reasonable grounds so as to avoid the imposition of liquidated damages."); *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 841 n.5 (6th Cir. 2002) ("Although a jury verdict finding that the employer acted willfully forecloses the possibility of finding that the employer acted in good faith, . . . the reverse is not necessarily true.").

Defendant, however, argues that, because the Supreme Court has held that a finding of nonrecklessness equates to a finding of good faith, and because the jury found no recklessness on Defendant's part,[1] the Court should find that Defendant acted in good faith, and refuse to award liquidated damages. In support, Defendant cites to *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985), and *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993), cases involving the Age Discrimination in Employment Act ("ADEA"). The ADEA requires a showing of "willfulness" before liquidated damages may be awarded. See 29 U.S.C. § 626(b).

In *Thurston*, the Court held that where an employer acts reasonably and in good faith in attempting to determine whether a particular action would violate the ADEA, it cannot be said that the employer's conduct was "willful." 469 U.S. at 128-29. Likewise, in *Hazen Paper*, the Court stated, "[i]f an employer incorrectly but in good faith and nonrecklessly believes that the statute permits a particular age-based decision, then liquidated damages should not be imposed." 507 U.S. at

---

[1]  Defendant notes that the Court herein instructed the jury that it could find that Defendant "willfully" violated the FLSA if it "knew its conduct was prohibited by law, or showed reckless disregard for whether its conduct was prohibited by law." Doc. #89, PageID#2776.

4

616. Defendant acknowledges that these cases involve the ADEA, and not the FLSA, but notes that, in *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988), the Court held that the standard of willfulness adopted in *Thurston* is also a "fair reading" of the "willfulness" language of the FLSA.

These cases, however, are inapposite. Plaintiff correctly points out that, with respect to liquidated damages under the FLSA, the question is not whether Defendant acted *willfully*, but whether Defendant acted "in good faith" and had "reasonable grounds" for believing that it was not violating the statute.

Although willfulness requires intentional or reckless disregard of the law, *Elwell,* 276 F.3d at 841 n.5, mere negligence is sufficient to support an award of liquidated damages under the FLSA. *Martin*, 381 F.3d at 584. As explained in *Elwell*, "an employer who acted negligently—but not willfully—in violating the FLSA would not be able to satisfy the objective standard of reasonableness required to demonstrate good faith." 276 F.3d at 841 n.5.

In short, the jury made no determination as to whether Defendant acted negligently. Because negligence is sufficient to support an award of liquidated damages, the jury's determination—that Defendant did not know that its conduct violated the FLSA, and did not show reckless disregard for whether its conduct was prohibited by the FLSA—is not dispositive.

Moreover, even if "the absence of willfulness [were the] equivalent to the presence of good faith," a jury's finding that the plaintiff failed to prove that the employer acted willfully is not necessarily inconsistent with the court's finding that

5

the employer failed to prove that it acted in good faith. This is because the burden of proof rests on different parties. *See Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1274 (11th Cir. 2008).

Here, the Court finds that Defendant has not satisfied its burden of proving that it acted in good faith and had reasonable grounds for failing to pay Plaintiff overtime compensation to which she was entitled. Defendant points to no specific evidence presented at trial. It simply states that the testimony of its employees— that they were aware of the FLSA's overtime compensation requirements— combined with the jury's verdict on the "willfulness" issue, supports a finding of good faith. The Court is not persuaded.

At trial, Plaintiff's supervisor, Sally Fairchild, testified that, because she read the journal log that Plaintiff submitted, she knew or should have known that Plaintiff was working at home in the evenings and on the weekends and not reporting those hours or being paid for them. Given this testimony, it cannot be said that Defendant acted in good faith in relying on the time sheets that Plaintiff submitted, or had reasonable grounds for failing to properly compensate her. *See Martin*, 381 F.3d at 586 (noting that "the good faith requirement imposes an affirmative burden" and an employer may not rely on incorrect information submitted by an employee in the face of actual knowledge to the contrary). Accordingly, the Court awards liquidated damages to Plaintiff in the amount of $2,739.00, bringing the total judgment to $5,478.00.

6

## II.    Attorneys' Fees and Costs

The FLSA provides that the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). This fee-shifting provision exists to insure that plaintiffs with wage and hour grievances have effective access to the judicial process. *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994). The court, however, has discretion in determining what constitutes a reasonable fee. *Id.*

The Supreme Court has noted that fee-shifting statutes "were not designed as a form of economic relief to improve the financial lot of attorneys, nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

Here, Plaintiff seeks $170,358.75 in attorney's fees and $4,107.47 in costs. She also seeks additional attorney's fees for post-trial expenses incurred in connection with preparing the Motion for Attorney Fees and briefing the liquidated damages issue.

### A.    Attorneys' Fees

Defendant argues that Plaintiff is not entitled to any attorney's fees because, given that she will ultimately obtain *no* monetary relief in this action, she cannot be considered the "prevailing party." In the alternative, Defendant argues that Plaintiff's request must be significantly reduced for a variety of reasons.

7

### 1. Entitlement to Fees

In October of 2014, on the eve of trial, Plaintiff told her attorneys that she had just found numerous additional text messages and email messages to support her claim for overtime pay. Her attorneys asked the Court for additional time to review these new documents and incorporate them into her case-in-chief.

Noting the obvious prejudice to Defendant, the Court gave Plaintiff the option of going forward as planned, without this additional evidence, or delaying trial and placing sufficient funds in an escrow account to cover Defendant's anticipated fees and costs resulting from the delay. Plaintiff chose the latter option, apparently believing that the newfound evidence would significantly increase the chance of a larger verdict in her favor. Defendant estimated that it would incur $20,960.00 in expenses as a result of the delay, and the Court ordered Plaintiff to deposit that amount in an escrow account in the Clerk's office. Plaintiff did so.

To the extent that Defendant can provide sufficient documentation of the fees and costs incurred by the delay, Plaintiff will forfeit all or a portion of that $20,960.00 to Defendant. Even with the liquidated damages award, Plaintiff's total judgment is only $5,478.00. Accordingly, despite the jury's verdict in her favor, Plaintiff may suffer a monetary *loss* of more than $15,000.00. While Plaintiff may have the moral satisfaction of knowing that the jury found that her FLSA rights were violated, her actual recovery might well be zero.

Defendant cites numerous cases in which courts have held that a plaintiff can be considered a "prevailing party" only when she obtains relief on the merits of the claim, and obtains an enforceable judgment. *See, e.g.*, *Farrar v. Hobby*, 506 U.S. 103, 111 (1992). These cases, however, are mostly civil rights cases, involving discretionary awards of fees to the "prevailing party" under 42 U.S.C. § 1988.[2] In contrast, the FLSA *requires* the Court to award attorney's fees against any employer who violates the FLSA, and the relevant statute, 29 U.S.C. § 216(b), contains no "prevailing party" language.

Accordingly, the fact that Plaintiff's ultimate recovery may be zero does not foreclose an award of attorney's fees under § 216(b). Defendant was found to have violated the FLSA. This is all that is required.

### 2. Amount of Fees

In the alternative, Defendant argues that Plaintiff's claim for $170,358.75 in attorney's fees should be significantly reduced for a variety of reasons. The Court agrees.

The Supreme Court has held that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This "lodestar method" also applies in FLSA cases. *Moore v. Freeman*, 355 F.3d 558, 565 (6th Cir. 2004). Once the

---

[2] Other cases cited by Defendant involve contractual attorney's fee provisions.

court determines the lodestar amount, it may adjust it up or down, as warranted by the facts of the case. *Id.*

### a. Lodestar Amount

#### i) Reasonableness of Hourly rates

Defendant does not challenge the hourly rates charged by Plaintiff's counsel—$275 per hour for attorney John Folkerth, and $180 per hour for attorney Kenneth Heisele. After reviewing counsel's affidavits, the Court finds that those hourly rates are in line with the prevailing local market rates for attorneys with comparable skill and experience, and are, in fact, reasonable. *See* Docs. ##97-1, 97-2, PageID##2875-78.

#### ii) Reasonableness of Hours Expended on Litigation

With respect to the question of the number of hours reasonably expended on the litigation, Defendant argues that Plaintiff's fee request should be significantly reduced because: (1) Plaintiff is not entitled to recover fees incurred in connection with the three unsuccessful claims; and (2) documentation supporting the fee request is insufficient to establish entitlement thereto.

#### *Unsuccessful claims*

Plaintiff concedes that she cannot recover fees for work on the three claims on which the jury found in Defendant's favor. *See Hensley*, 461 U.S. at 435 (noting that "work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved.") (internal quotation omitted).

Accordingly, Plaintiff's counsel has already reduced the fee request from $242,946.25 to $170,358.75. *See* Doc. #97-3, PageID#2943.

Defendant nevertheless challenges several remaining billing entries as being unrelated to Plaintiff's FLSA overtime claim. In her reply brief, Doc. #102, Plaintiff concedes that an additional $6,652.50 reduction is warranted, for entries related to Deonda Myers' deposition, the filing of briefs on the two retaliation claims, and a few miscellaneous items. Accordingly, Plaintiff's adjusted fee request stands at $163,706.25.

Defendant also argues that charges associated with the depositions of Sally Fairchild and Roger Christian should be reduced because much of their testimony— concerning performance evaluations, promotion requests, and allegations of hostility—related only to Plaintiff's unsuccessful FLSA retaliation claim. Plaintiff replies only that Defendant has failed to identify any specific portions of the depositions that are entirely irrelevant to the FLSA overtime claim, which was the primary focus of the depositions and the lawsuit in general. In addition, Defendant argues that charges related to written discovery requests should be reduced because that discovery encompassed all four claims.

The Court agrees that slight reductions are warranted. It appears that Mr. Heisele billed approximately $5,265.00 between January 31, 2014, and February 7, 2014, for preparing for, and conducting the depositions of, Roger Christian and Sally Fairchild. Doc. #97-3, PageID#2894. The Court has reviewed the depositions of those two witnesses, Docs. ##28, 29, and finds that a 20% fee

11

reduction is warranted to account for those portions of the depositions directed to Plaintiff's FLSA retaliation claim and her FMLA claims. Accordingly, the Court will reduce the fee request by $1,053.00, bringing the adjusted total to $162,653.25.

The Court likewise finds that a reduction in fees is warranted for discovery requests related to the three unsuccessful claims. Unfortunately, neither party has identified what percentage of the parties' discovery requests was targeted to those claims. Because the FLSA overtime claim was the primary focus of the litigation, the Court will attribute 75% of the discovery requests to that claim. After reviewing the pages of billing entries identified by Defendant, Doc. #97-3, PageID##2883-2887, it appears that, at most, Plaintiff's counsel billed $3,361.50 in connection with written discovery requests. The Court finds it reasonable to reduce the discovery-related billing entries by 25%, or $840.38, bringing the adjusted total to $161,812.87.

Defendant also challenges time spent by Plaintiff's counsel on motions to amend the exhibit list, Docs. ##41 and 42, because these were unrelated to the FLSA overtime claim. As Plaintiff points out, however, these charges were already removed. *See* Doc. #97-3, PageID#2905.

Next, Defendant argues that Plaintiff is not entitled to recover fees incurred in connection with Defendant's motion to compel, Doc. #64. Defendant argues that because it prevailed on that motion with respect to the FLSA overtime claim, Plaintiff cannot recover these fees, particularly since, under Federal Rule of Civil Procedure 37(a)(5), Defendant would be entitled to its *own* fees incurred as a

12

result of having to file that motion. Notably, however, Defendant never requested fees in connection with the motion to compel, and it is too late to do so now. Moreover, Defendant prevailed on that motion only in part. Because the documents at issue related to the FLSA overtime claim, the Court finds that Plaintiff is entitled to fees incurred in connection with the motion to compel.

Finally, Defendant argues that Plaintiff is not entitled to fees associated with the motion in limine, Doc. #75, because it related only to the FLSA retaliation claim. The Court agrees. Counsel maintains that they have already been removed. While this appears to be the case with respect to Mr. Heisele, Doc. #97-3, PageID#2939, the same cannot be said for Mr. Folkerth, Doc. #97-3, PageID#2935.

Due to the nature of the block billing used, it is difficult to tell exactly how much time Mr. Folkerth devoted to the motion in limine, because the daily entries are not broken down by task. An attorney is required to submit sufficient documentation in support of a request for fees so that the court can determine whether the hours charged were reasonably expended. Block billing is acceptable, "so long as the description of the work performed is adequate." *Smith v. Service Master Corp.*, 592 F. App'x 363, 371 (6th Cir. 2014).

Inadequate billing descriptions, however, may lead to a reduction in the award. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008). When block billing makes it impossible to determine how much time was spent on

any particular task, courts often make an across-the-board reduction, based on a reasonable estimate of the number of hours expended.

According to the billing entries, Mr. Folkerth spent *some* time working on the response to the motion in limine on April 24th, 25th, and 26th of 2015. The April 24th entry has already been reduced from 6.75 hours to 3.75 hours. Doc. #97-3, PageID#2935. The Court will give Plaintiff the benefit of the doubt, and assume that this reduction was related to the motion in limine.

The April 25th entry is for 8.75 hours, and has not been reduced at all. Tasks for that day included "Study response brief filed by Yaskawa; study file materials and work on preparation of voir dire questions and opening statement; review notice from Court and study Yaskawa motion in limine and outline issues; study trial exhibits and review and revise Sally Fairchild and Deonda Myers witness examinations." Doc. #97-3, PageID#2935. Mr. Folkerth's April 26th entry has already been reduced from 9.25 hours to 9.0 hours, albeit for an unrelated reason. Tasks completed during those 9 hours include: "Meet and consult with Ms. Fulkerson concerning trial preparation and witness examination; meet and consult with K. Heisele concerning trial preparation, witness examinations and response to Yaskawa motion in limine; . . . study file materials and work on voir dire questions and opening statement outline." *Id.*

It appears that Mr. Folkerth completed a wide variety of tasks on each of these days, but it is not clear how much time he spent working on the motion in limine. Based on the nature of the other tasks also completed on April 25th and

14

26th, the Court finds it reasonable to attribute 4 hours—of the total 17.75 hours billed on those two days—to the motion in limine. Accordingly the Court will reduce the fee request by $1,100.00 ($275.00 x 4), bringing the adjusted total to $160,712.87.

### Sufficiency of Documentation

Defendant next argues that the fees must be further reduced to account for redundant and duplicative billing, excessive billing, vague entries, and block billing. For several reasons, the Court agrees that a significant across-the-board reduction is warranted.

At Plaintiff's request, trial was delayed from October of 2014, to April of 2015. According to the billing entries, Plaintiff's attorneys billed nearly as many hours between October of 2014, and April of 2015, as they had prior to October of 2014.[3] Defendant maintains that much of the work performed after October of 2014 was redundant. Plaintiff notes that Defendant has not identified any specific billing entries between October of 2014 and April of 2015 that may be deemed duplicative with respect to trial preparation. As a matter of common sense, however, there is bound to be *some* duplication of effort when, on the eve of trial, the Court agrees to a six-month delay. Depositions, exhibits, opening statements,

---

[3]  According to Defendant, after October of 2014, Mr. Folkerth billed 171.25 hours for trial preparation, Doc. #97-3, PageID##2911, 2918-19, 2922, 2927-35, and Mr. Heisele billed 59.25 hours, *id.* at PageID##2923-27, 2936-39.

and questions for witnesses must be reviewed, and witnesses must again be prepped for trial.

Any delay of trial has a price and, because the delay in this case is attributable solely to Plaintiff, who failed to turn over all relevant evidence to her attorneys in a timely manner, it would be unfair to make Defendant shoulder the cost of that delay, either directly or through an award of attorney's fees. The Court has already ordered Plaintiff to deposit $20,960.00 to cover Defendant's expenses caused by the delay. Equity likewise requires a reduction in fees incurred by Plaintiff between October of 2014 and April of 2015, to account for redundancies attributable to the delay.

Defendant also argues that the fee request should be reduced because of excessive billing. It notes that Plaintiff's counsel regularly billed .25 hours for studying or drafting a single email, or studying or reviewing a notation order or other notice from the Court. Defendant correctly points out that it does not take 15 minutes to complete any of these tasks. Plaintiff's attorneys deny that they billed a minimum of .25 hours per task, but admit that they billed a daily minimum of .25 hours. Therefore, the client may be billed .25 hours for reading an email message or a notice from the Court, but only on dates where no *other* tasks are performed. The problem is that this situation appears more than two dozen times in the billing records, and accounts for more than $1,600.00 in fees that Plaintiff now wants to pass on to Defendant. The Court agrees with Defendant that these fees are excessive.

16

In addition, Defendant urges the Court to reduce the fees because of Plaintiff's pervasive use of block billing. Counsel "is not required to record in great detail how each minute of his time was expended," but must "identify the general subject matter of his time expenditures." *Hensley*, 461 U.S. at 437 n.12. As previously noted, there is nothing inherently wrong with block billing "so long as the description of the work performed is adequate." *Smith*, 592 F. App'x at 371.

Here, Defendant correctly points out that Plaintiff's use of block billing makes it very difficult to determine whether the amount of time spent on any one task was reasonable. The problem is compounded by the fact that Plaintiff succeeded on only one of four claims, and had two attorneys representing her. Defendant cites to several cases in which courts have cut fee requests when block billing made it difficult to determine if the request was reasonable. *See, e.g.*, *Gibson v. Scott*, No. 2:12-cv-1128, 2014 WL 661716, at **5-7 (S.D. Ohio Feb. 19, 2014) (cutting fee request by 70% because of block billing and other billing deficiencies); *Heath v. Metro. Life Ins. Co.*, No. 3:09-cv-0138, 2011 WL 4005409, at **10-11 (M.D. Tenn. Sept. 8, 2011) (cutting fee request by 20% because block billing and vague entries made it difficult to determine whether the hours expended were reasonable).

Here, Plaintiff's counsel has identified the general subject matter of the tasks that were completed on any given day. However, the billing entries do not indicate how much time was spent on any individual task, and some of the entries are too vague to enable the Court to determine whether the tasks performed were related

17

to Plaintiff's FLSA overtime claim, or whether the amount of time spent on those tasks was reasonable. *See, e.g.*, *Perry v. Autozone Stores, Inc.*, —F. App'x—, 2015 WL 4940121, at *3 (6th Cir. Aug. 20, 2015) (cutting fee request by 15% because "[a]lthough we do not question Plaintiffs' counsel's representations regarding the amount of time she actually expended on this matter, the lack of detail in the billing statement does raise concerns regarding the reasonableness of the time billed.").

In the Court's view, a 25% across-the-board reduction is necessary to account for: (1) billing redundancies caused by the delay of trial; (2) excessive billing; and (3) difficulties posed by the nature of the block billing. Accordingly, the Court will reduce the lodestar amount from $160,712.87 to $120,534.65.[4]

### b. Adjustments to the Lodestar

Determination of the lodestar amount, however, is only a "starting point" in determining what constitutes a reasonable attorney's fee award. *Hensley*, 461 U.S. at 433. The Court must then consider whether that figure should be adjusted up or down based on other factors. *Id.* at 434. In this case, Defendant asks the

---

[4]  Having reviewed the billing entries cited by Defendant, Doc. #100, PageID##3003-04, and Mr. Folkerth's affidavit, Doc. #102-1, PageID##3043-44, the Court rejects Defendant's argument that Plaintiff's counsel duplicated efforts and charged for reviewing each other's work. Although counsel often worked on similar tasks on the same date, there does not appear to be any significant duplication of effort. Defendant also challenges numerous billing entries for "studying file materials" or "studying research materials" for vagueness. As Plaintiff points out, however, these entries are not vague when viewed in context of the entire billing entry. The billing entries consistently indicate that counsel reviewed the file or research materials in conjunction with completing another task.

Court to reduce the lodestar amount based on Plaintiff's limited success on the FLSA overtime claim, and Plaintiff's failure to accept reasonable settlement offers.

Defendant first urges the Court to reduce the lodestar amount by 80% across-the-board to account for the limited degree of success on the FLSA overtime claim, the only claim on which Plaintiff prevailed. Although Plaintiff asked the jury to award her $53,269.79 in unpaid overtime compensation, the jury awarded just $2,739.00, only about 5% of what she requested. The Court has awarded an equal amount as liquidated damages, bringing the total judgment to $5,478.00.

The fact that the $120,534.65 lodestar amount is more than 22 times greater than the $5,478.00 judgment is somewhat disconcerting. Nevertheless, the Sixth Circuit has cautioned that "[c]ourts should not place an undue emphasis on the amount of the plaintiff's recovery," noting that substantial awards of attorney's fees are often upheld even in cases where the damages awarded are quite small. *Fegley*, 19 F.3d at 1134-35 (upholding $40,000 fee award where plaintiff was awarded only $7,680.00 in damages). This comports with the purpose of the fee-shifting provision of the FLSA, *i.e.*, "to encourage the vindication of congressionally identified policies and rights," and enable aggrieved parties to obtain damages without having to pay legal expenses. *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.*, 732 F.2d 495, 503 (6th Cir. 1984).

Because the damages awarded in cases involving fee-shifting statutes are often quite small, "the fee award need not be proportionate to the damages award." *Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300, 1311 (10th Cir. 2014). *See also Dean v. F.P. Allega Concrete Constr. Corp.*, No. 14-3788, 2015 WL 4880057, at *5 (6th Cir. Aug. 14, 2015) (Donald, J., concurring in the judgment only) ("the mere existence of a large difference between damages awarded and fees requested does not, by itself, indicate that a district court abused its discretion in conducting the necessary calculations.")[5]; *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (holding that attorney's fees under 42 U.S.C. § 1988 need not be proportionate to an award of money damages).

Accordingly, a gross disparity between the amount of the judgment and the amount of the fee award may not be cause for alarm. However, in determining the reasonableness of a fee request, a gross disparity between the amount of damages sought by the plaintiff and the amount actually awarded by the jury deserves a much closer look.

The Supreme Court has held that the most crucial factor in determining whether the lodestar amount should be adjusted up or down is "the degree of

---

[5] In *Dean*, an FLSA case, the district court had awarded $25,422 in attorney's fees, more than 217 times the $117.00 damages award. The Sixth Circuit reversed the reward and remanded it for further proceedings because the district court had failed to consider the relationship between the fees awarded and results obtained. The appellate court noted that, if the lawsuit had, in fact, "vindicated the broader purpose of the FLSA," the $25,422 fee award might have been reasonable. However, the jury had based its damages award not on the alleged FLSA violation, but on a bookkeeping error. 2015 WL 4880057, at *2.

20

success obtained." *Hensley*, 461 U.S. at 436. In deciding whether to reduce the

lodestar amount on this basis, the district court must consider "the relationship

between the amount of the fee awarded and the results obtained." *Id.* at 437. "A

reduced fee award is appropriate if the relief, however significant, is limited in

comparison to the scope of the litigation as a whole." *Id.* at 440. "[W]here the

plaintiff achieved only limited success, the district court should award only that

amount of fees that is reasonable in relation to the results obtained." *Id.*

Courts often cut fee requests in FLSA cases based on the limited degree of

success. *See, e.g.*, *Snide v. Discount Drug Mart, Inc.*, No. 1:11-cv-244, 2013 WL

6145130 (N.D. Ohio Nov. 21, 2013) (reducing fee request by 50%); *Farmer v.

Ottawa County*, 211 F.3d 1268 (6th Cir. 2000) (Table) (affirming 33% reduction

in fee award based on limited success); *Powell v. Carey Int'l, Inc.*, 547 F. Supp.2d

1281 (S.D. Fla. 2008) (reducing fee request by 67% where FLSA plaintiffs

accepted offers of judgment that were less than 2% of what they initially sought

to recover); *James v. Wash Depot Holdings, Inc.*, 489 F. Supp.2d 1341 (S.D. Fla.

2007) (cutting fee request by 50% where plaintiff was awarded only .5% of

damages sought).[6]

---

[6]  Likewise, appellate courts have upheld substantial fee cuts based on limited
success in civil rights cases seeking fees under 42 U.S.C. § 1988. *See, e.g.*,
*Kentucky Rest. Concepts, Inc. v. City of Louisville*, 117 F. App'x 415 (6th Cir.
2004) (upholding 35% reduction in lodestar amount based on results obtained);
*Popham v. City of Kennesaw*, 820 F.2d 1570 (11th Cir. 1987) (upholding 67%
reduction where plaintiff sought $2 million at trial but was awarded only $30,000).

Here, the jury awarded Plaintiff only 5% of the amount of overtime pay to which she claimed to be entitled. Of course, standing alone, the fact that a plaintiff is not awarded all of her requested damages does not necessarily require a reduction in attorney's fees. Sometimes "it merely means that the lawyers aimed higher than they hit," which is often "a sound tactic." *Bankston v. State of Ill.*, 60 F.3d 1249, 1256 (7th Cir. 1995). *See also Garcia*, 770 F.3d at 1311 (upholding substantial fee award even though the jury awarded only 8% of the damages sought by plaintiffs in FLSA suit). Whether a reduction in attorney's fees is warranted based on the results obtained will almost always depend on the unique facts of the case.

In this case, Plaintiff's attorneys are both highly skilled advocates, with considerable experience in the area of employment law. However, in the Court's view, because they were not objective in their assessment of the value of their client's case, or of the value of the new documents that Plaintiff gave them on the eve of trial, the efforts they expended—particularly after October 10, 2014— were *grossly* disproportionate to the result obtained. As one circuit court has noted:

> In addition to competence and skill, a successful advocate brings a reasonable amount of enthusiasm and tenacity to the client's cause. A lawyer, however, must temper energy with good judgment, know when to pursue litigation and when to cease the pursuit. The present case . . . appears to be an example of unchecked enthusiasm. Among the hazards of such a lack of judgment . . . is the risk that payment will not be shifted to the other party if one's efforts are unsuccessful.

*Diver v. Goddard Mem'l Hosp.*, 783 F.2d 6, 6 (1st Cir. 1986) (upholding award of just $1,000 of $25,000 attorney fee request in FLSA case where plaintiff sought $125,000 in damages, but jury awarded only $2,028).

In the Court's view, the "unchecked enthusiasm" of Plaintiff's counsel in *this* case cost their client dearly, and must be considered in determining what constitutes a reasonable fee in relation to the results obtained.

As Defendant points out, it offered to settle this case on several occasions prior to trial, for considerably more money than the jury awarded. Defendant offered $20,000 in March of 2014, prior to filing its motion for summary judgment. Seven months later, on October 10, 2014—with trial scheduled to begin just four days later—Defendant increased that offer to $50,000.

Citing *McKelvey v. Secretary of U.S. Army*, 768 F.3d 491 (6th Cir. 2014), Defendant argues that Plaintiff's rejection of these settlement offers may be considered in determining the degree of success obtained. In *McKelvey*, the court held that fees incurred following rejection of a reasonable offer "do not provide meaningful value to a prevailing party or for that matter to society in general." *Id.* at 495. Here, because the jury awarded $2,739.00, only about 5% of Defendant's final $50,000 settlement offer, Defendant persuasively argues that fees incurred after October 10, 2014, should be stricken or, at a minimum, drastically reduced.

Plaintiff maintains that the settlement offers, which were inclusive of attorney's fees, were not reasonable because, at no point did they exceed the

damages actually awarded, plus liquidated damages, plus attorney's fees and expenses incurred up to that date, as reduced by counsel. According to Mr. Heisele's affidavit, by March of 2014, reduced attorney's fees had already reached $19,396.25. Doc. #102-2, PageID#3046. On October 10, 2014, reduced attorney's fees were $50,461.25 and reduced expenses were $2,920.39, a total of $53,381.64. *Id.* While Plaintiff's counsel is correct that the $50,000 offer did not exceed this amount, plus the damages actually awarded ($2,739.00), plus liquidated damages ($2,739.00), the Court notes that the difference is only $8,859.64. Moreover, as of October 10, 2014, Plaintiff had lowered her settlement demand to $72,500.

In hindsight, one could say that Plaintiff's rejection of the $50,000 settlement offer on October 10, 2014, was unreasonable, and perhaps it was. More problematic, in the Court's view, however, is what transpired in the days that followed, at a pivotal point in the litigation.

Trial was scheduled to begin on October 14, 2014. During a conference call on October 10, 2014, Plaintiff's counsel reported to the Court that, on the previous day, Plaintiff had given them dozens of new documents that appeared to support her FLSA overtime claim. They requested time to review them and assimilate them into their case-in-chief.

The Court held additional conference calls on October 13, 2014, and October 24, 2014. Plaintiff's counsel reiterated their desire to continue the trial so that they could make use of the newly-discovered evidence. Defendant objected

on grounds of prejudice. Defense counsel also pointed out that many of the new exhibits were single texts or email messages sent or received after normal working hours, and that the time it took for Plaintiff to send or read these messages was *de minimis* and would not be compensable under the FLSA as a matter of law.

The Court found that Plaintiff (not her counsel) had been grossly negligent in failing to produce these documents in a timely manner. The Court therefore gave her two choices. She could go forward with trial the next day as scheduled, without the new documents. In the alternative, the Court would continue the trial on the condition that she agreed to pay all expenses incurred by Defendant as a result of the delay. Plaintiff chose the latter option, and the Court instructed Defendant to prepare an estimate of costs and fees that would be incurred as a result of the delay. Defendant's counsel submitted an estimate of $20,960.

During a conference call held on October 30, 2014, the Court encouraged the parties to resume negotiations, noting that the $20,960, which Plaintiff would be required to deposit in an escrow account, was very close to the $22,500 gap in the parties' last-articulated settlement positions. Counsel for Defendant noted, however, that, over the last couple of weeks, Plaintiff's demand had climbed back to six figures, thereby widening the gap.

Under the circumstances presented here, the Court agrees with Defendant that attorney's fees incurred by Plaintiff after October 10, 2014, must be substantially reduced. Plaintiff's attorneys placed an unreasonably high value on the newly-discovered evidence, apparently believing that it would significantly

increase their client's chances of a large jury verdict.  Even after being informed that the *quid pro quo* for being able to use these documents at trial was $20,960, they decided that it was a risk worth taking.

Unfortunately, they were gambling with their *client's* money, and that gamble did not pay off.  Although Plaintiff requested $53,269.79 in unpaid overtime compensation, the jury awarded just $2,739.00.  Not only did Plaintiff recover a mere fraction of the damages she sought, but she is also now liable to Defendant for as much as $20,960 in expenses.  To put it bluntly, despite a verdict in her favor, Plaintiff could end up suffering a net *loss* of more than $15,000.

Given the facts of this case, it seems grossly unfair to award Plaintiff's counsel $120,534.65 in attorney's fees.  Notably, a large portion of those fees were incurred after Plaintiff rejected the $50,000 settlement offer in October of 2014.  Counsel spent many hours reviewing the new exhibits and incorporating them into their case.  In fact, over the next six months, their reduced attorney's fees more than *tripled* as they prepared for trial, climbing from $50,461.25 to $163,706.25.  The extraordinary amount of time expended by counsel between October of 2014 and April of 2015, simply cannot be justified, given the jury's small award in this case.

Had counsel been more objective in their assessment of the potential value of the new documents, and of the case in general, perhaps they would have encouraged their client to either accept the $50,000 offer in October of 2014, or

to go to trial without the new documents. Instead, they advised her to gamble $20,960 of her own money in the hope that these exhibits would provide some additional traction with the jury. It is difficult to say that the fees incurred after October of 2014 provided much "meaningful value" to Plaintiff. *See McKelvey*, 768 F.3d at 495.

In light of Plaintiff's limited success on the merits of the FLSA overtime claim and the extraordinary number of hours spent on this litigation after Plaintiff rejected the $50,000 settlement offer in October of 2014, the Court finds that a 67% across-the-board reduction to the lodestar amount is warranted to render the fees "reasonable in relation to the results obtained." *Hensley*, 461 U.S. at 440.[7] Accordingly, the Court reduces the lodestar amount from $120,534.65 to $39,776.43.

### 3. Post-trial Fees

In addition to the fees requested in the Motion for Attorney Fees, Doc. #97, Plaintiff has also requested "an additional amount to cover time reasonably incurred by Ms. Fulkerson after trial, including, but not limited to, the time necessary to prepare [the motion for attorney's fees] and brief the liquidated damages issue." Doc. #97, PageID#2869. The Court agrees that Plaintiff is entitled to such fees. Plaintiff is therefore directed to file a Supplemental Motion

---

[7]   In making this cut, the Court remains mindful of the purpose behind the fee-shifting provision of the FLSA. However, given the unique circumstances of this case, as set forth herein, the Court does not believe that a reduction of this magnitude will discourage other attorneys from representing plaintiffs in FLSA cases.

for Attorney's Fees within 10 days of the date of this Decision and Entry.

Defendant may respond within 7 days thereafter.

> **B.    Costs**

Plaintiff seeks a total of $4,107.47 in costs, as follows: $256.25 in filing

fees; $2,238.60 in deposition costs; $540.00 for legal research; $934.16 for

photocopies; $4.00 for faxes; $74.10 in postage; and $60.36 in witness fees and

mileage.

"The party seeking costs must not only show that the costs claimed are

recoverable, but must also provide sufficient detail and sufficient documentation

regarding those costs in order to permit challenges by opposing counsel and

meaningful review by the Court." *Vistein v. Am. Registry of Radiologic*

*Technologists*, No. 1:05cv2441, 2010 WL 918081, at *4 (N.D. Ohio Mar. 10,

2010).

Defendant argues that the request for costs should be denied in its entirety

because Plaintiff has failed to provide adequate documentation.  In the alternative,

Defendant argues that certain costs are not recoverable because they relate only to

Plaintiff's unsuccessful claims.  More specifically, Defendant notes that, according

to Plaintiff's brief, it appears that she is still seeking to recover the costs of

Deonda Myers' deposition.  Plaintiff's brief states: "Ms. Fulkerson is not seeking

costs for matters not directly related to her claims that she worked overtime

without compensation.  Ex. A, ¶ 3; Ex. B, ¶ 3.  For example, she is not seeking

costs for the depositions of Dianne Williams, Dr. Balster, Dr. Gleick, or Mr.

28

Fulkerson; witness fees for Dr. Balster or Dr. Gleick; costs for legal research on the retaliation or FMLA claims; and costs for witnesses that Ms. Fulkerson decided not to require to appear at trial." Doc. #97, PageID#2873. Notably, Deonda Myers is not included in this list, and it is impossible to tell from the billing summary whether costs related to her deposition have already been deducted.

Defendant also maintains that the charge for legal research lacks sufficient detail to allow the Court determine if it is recoverable. In *Smith v. Service Master Corp.*, 592 F. App'x 363 (6th Cir. 2014), the court held:

> If the lawyer or firm pays a blanket access fee, rather than per search, there is no reason to distinguish the on-line research cost from the cost of the books that at one time lined the walls of legal offices, which was treated as overhead. If distinct charges are incurred for specific research directly relating to the case, and the general practice in the local legal community is to pass those charges on to the client, we see no reason why such properly documented charges should not be included in the recoverable expenses.

*Id.* at 368. The billing records submitted by Plaintiff appear to show that each time counsel logged into Westlaw, the client was billed a flat fee of $45.00. *See, e.g.*, Doc. #97, PageID#2950. However, the record contains no basis for determining whether or not these fees should be treated as overhead.

Notably, Plaintiff has not responded to any of Defendant's arguments concerning the alleged insufficiencies in documentation of costs. The Court would like the benefit of Plaintiff's response before ruling on this issue. Accordingly, Plaintiff is directed to address the alleged insufficiencies within 10 days of the date of this Decision and Entry. Defendant may respond within 7 days thereafter.

III.    **Escrow Funds**

As noted earlier, Plaintiff has deposited $20,960.00 into an escrow account with the Clerk of Court, the amount that Defendant estimated it would incur in fees and costs as a result of the delay in trial.  Within 10 days of the date of this Decision and Entry, Defendant shall submit documentation of the actual fees and costs incurred as a result of the delay.  Plaintiff may file a response within 7 days thereafter.


IV.    **Conclusion**

In accordance with 29 U.S.C. §§ 216(b) and 260, the Court awards Plaintiff $2,739.00 in liquidated damages.  Plaintiff's Motion for Attorney Fees, Doc. #97, is SUSTAINED IN PART and OVERRULED IN PART.  The Court awards Plaintiff $39,776.43 in attorney's fees to date.  Within 10 days of the date of this Decision and Entry, Plaintiff shall submit the following:  (1) a supplemental motion for attorney fees incurred in connection with the attorney fee issue; and (2) additional briefing and documentation to support the request for costs.  Defendant may file a response brief within 7 days thereafter.

Within 10 days of the date of this Decision and Entry, Defendant shall submit documentation of fees and costs actually incurred as a result of the delay in trial.  Plaintiff may file a response brief within 7 days thereafter.

The Court will enter final judgment after resolving these outstanding issues.

30

Date: October 23, 2015

_____

WALTER H. RICE
UNITED STATES DISTRICT JUDGE